UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL DEWITT,                          )
                                         )
      Plaintiff,                   )
                                         )    No. 24-CV-2737
      v.                           )
                                         )    Judge April M. Perry
LAKE COUNTY SHERIFF'S OFFICE,            )
LAKE COUNTY SHERIFF'S DEPUTY             )
CHRISTOPHER DEWITT, LAKE COUNTY          )
SHERIFF'S DEPUTIES DOES 1-3,             )
JULIA CWIENKALA DEWITT,                  )
                                         )
      Defendants.                  )

## OPINION AND ORDER

Plaintiff Michael DeWitt ("Plaintiff") brings this case against the Lake County Sherriff's Office, Lake Country Sheriff's Deputy Christopher DeWitt ("Christopher DeWitt"), Lake Country Sheriff's Deputies Does 1-3 ("Does 1-3"), and Julia Cwienkala DeWitt ("Julia DeWitt") (collectively "Defendants") under 42 U.S.C. § 1983 ("Section 1983") and Illinois state law. Specifically, Plaintiff alleges false arrest in violation of Section 1983 (Count I), false imprisonment in violation of Section 1983 (Count II), failure to intervene in violation of Section 1983 (Count III), conspiracy in violation of Section 1983 (Count IV), a *Monell* policy claim in violation of Section 1983 (Count V), malicious prosecution in violation of Illinois law and Section 1983 (Count VI), and requests that Defendants' conduct be indemnified by the Lake County Sheriff's Office under Illinois law (Count VII). All Defendants move to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 21, 22. For the reasons that follow, Defendants' motions to dismiss are granted.

## FACTUAL BACKGROUND

The below facts are drawn from allegations in Plaintiff's complaint, which the Court accepts as true, drawing all reasonable inferences in Plaintiff's favor. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).[1]

According to the complaint, Christopher DeWitt and Does 1-3 are Sheriff's Deputies in Lake County. Doc. 19 ¶¶ 6, 9. Christopher DeWitt is also Plaintiff's older brother and allegedly had an affair with Plaintiff's ex-wife, Julia DeWitt. *Id.* ¶¶ 10-11. Plaintiff claims that Christopher DeWitt lied under oath to obtain seven orders of protection against Plaintiff, and that Christopher DeWitt and Julia DeWitt wrongfully reported Plaintiff to the police claiming that Plaintiff had violated those protective orders. *Id.* ¶¶ 12-13. Plaintiff further alleges that Christopher DeWitt and Julia DeWitt "concocted a plan to cut [Plaintiff] off from his daughter's life by throwing him in jail 4 times on 4 separate warrants, totaling 160 days." *Id.* ¶ 51.

The first of these incidents occurred on October 12, 2021, when Algonquin Police responded to an incident involving Plaintiff's daughter at Plaintiff's ex-mother-in-law's house. *Id.* ¶¶ 14-16. The individuals included on the police report were Julia DeWitt, Christopher DeWitt, Elizabeth DeWitt (Plaintiff's mother), A.D. (Plaintiff's daughter), and Katherine King (Plaintiff's ex-mother-in-law). *Id.* ¶ 18. In November 2021, Katherine King petitioned the court for a protective order against Plaintiff. *Id.* ¶ 19.

More protective orders followed. On January 5, 2022, Julia DeWitt obtained a protective order against Plaintiff. *Id.* ¶ 26. Later that month on January 16, Plaintiff was served with the protective order at a police station. *Id.* ¶¶ 29, 31. Plaintiff claims he was made to go to the police station "due to his brother's connections." *Id.* ¶ 31. The following day, Plaintiff sent a message

---

[1] Plaintiff has amended his complaint twice. The first amended complaint was filed immediately after the case was opened on April 4, 2024. The second amended complaint was filed on September 4, 2024, which the Court views as the operative complaint.

via a family parenting app to check on his daughter and Julia DeWitt did not respond. *Id.* ¶ 32. On January 25, Julia DeWitt called in a violation of the protective order for the message sent on January 17. *Id.* ¶ 33. Between February and March 2022, there were five additional petitions for protective orders against Plaintiff filed by Maureen DeWitt, Andi Tuchten, Elizabeth DeWitt, Matthew DeWitt, and Christopher DeWitt. *Id.* ¶ 35. The complaint alleges that these were "orchestrated" by Christopher DeWitt. *Id.* ¶ 36.

The amended complaint alleges that Plaintiff was jailed four separate times for violations of these orders of protection. On March 10, 2022, Plaintiff was held at the Carpentersville Police Department because he allegedly violated an order of protection. *Id.* ¶ 37. From April 10 through 27, 2022, Plaintiff was incarcerated in Lake County Jail for another alleged protective order violation. *Id.* ¶ 38. From June 20 through 27, 2022, Plaintiff was held again at the Lake County jail until he posted bail and was given probation. *Id.* ¶¶ 48-49. And finally, from January 23 to June 8, 2023, Plaintiff was again jailed at Lake County. *Id.* ¶ 50. On April 4, 2023, Plaintiff was found not guilty in Kane County. *Id.* ¶ 53. On May 23, 2023, Plaintiff was found not guilty in Lake County. *Id.* ¶ 54. It is unclear how the above detentions correspond to the non-guilty findings in Kane County and Lake County.

Throughout the amended complaint, Plaintiff presents ways in which his brother allegedly violated his rights. Regarding the April 2022 detention, Plaintiff alleges that his brother had access to his mother's Ring Doorbell and asked her to call the police. *Id.* ¶ 39. Plaintiff alleges this "is the reason [he] is on probation and was eventually remanded and sentenced." *Id.* ¶ 40.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Ashcroft*, 556 U.S. at 678.

Plaintiff brings claims under Section 1983 and Illinois law. Section 1983 "creates a species of tort liability" in federal court for the deprivation of Constitutional rights. *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 362 (2017). To state a claim under Section 1983, a plaintiff must plead that: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir.

2003). "An action is taken under color of state law if it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Estate of Sims v. County. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). An action is not performed "under color of state law" when a state employee is "off on a frolic, trying to protect a personal interest." *Id*.

## ANALYSIS

### A. Claims Against Does 1-3

The Court begins with the claims against Lake County Sheriff's Deputies Does 1-3. The Doe defendants are referenced twenty-seven times in the amended complaint, always as a unit. Twelve of those references are labels in the case caption, claim heading, or prayer for relief. Two of those references allege that Does 1-3 are Lake County Sheriff's Deputies. The remaining thirteen references are legal conclusions such as that the Does "acted under color of state law," Doc. 19 ¶ 56, or that their conduct was "objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established Constitutional rights." *Id.* ¶ 71. Plaintiff does not include a single factual allegation explaining how any one of the Doe defendants was involved in this dispute, such that Plaintiff would be entitled to seek relief against them. *See Shea v. Winnebago Cnty. Sheriff's Dep't*, 746 F. App'x 541, 546 (7th Cir. 2018) (affirming dismissal where Plaintiff gave "no explanation of who was responsible for [plaintiff's] problems or how he was harmed by a particular person's actions."). Plaintiff will not even identify whether Does 1-3 participated in one of his four arrests (and if so, which one), or instead were corrections officers at Lake County Jail. Doc. 35 at 5 (According to Plaintiff, "Whether the County Defendants directly participated in the arrest or acted in concert with other agencies are questions of fact that cannot be resolved at this stage.").

The law is clear that a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although the federal rules require only notice pleading, not fact pleading, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Here, fair notice does not exist, as Plaintiff's complaint alleges more than a year of misconduct spanning seven orders of protection, four jail stints, and two prosecutions, without a hint as to what role Does 1-3 might have played. At this point, all Plaintiff has provided is "an unadorned, the-defendant-unlawfully-harmed-me accusation," which is not sufficient. *Ashcroft*, 556 U.S. 662, 678 (2009). The Court therefore dismisses Counts I, II, III, IV, and VI as they relate to Does 1-3. Plaintiff is granted leave to amend his complaint as to Does 1-3, to the extent he can plead facts that allow the Court to draw the reasonable inference that Does 1-3 may plausibly be liable for some part of the misconduct alleged.

## B. Claims Against Christopher DeWitt

Plaintiff brings claims against his brother Christopher DeWitt for false arrest (Count I), false imprisonment (Count II), failure to intervene (Count III), conspiracy to deprive Plaintiff of his constitutional rights (Count IV), and malicious prosecution (Count VI).

### i. False Arrest and False Imprisonment

Although Plaintiff was presumably arrested four different times (given his four different custody dates), the parties seem to agree that only the March 2022 and April 2022 arrests form the basis for Plaintiff's false arrest and false imprisonment claims. Defendants argue that any claim arising from the March 10, 2022 arrest would be barred by the statute of limitations. Although the statute of limitations is an affirmative defense, and a plaintiff ordinarily need not

anticipate and attempt to plead around affirmative defenses, the Court may reach the issue on a motion to dismiss when "the allegations of the complaint set forth everything necessary to satisfy the affirmative defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (finding dismissal "appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense"). Here, the allegations of the amended complaint are obvious enough to consider the timeliness of Plaintiff's false arrest and false imprisonment claims.

The statute of limitations in Section 1983 cases is governed by the state law limitations period in personal injury actions. *See Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). In Illinois, personal injury actions are governed by a two-year statute of limitations. 735 ILCS 5/13-202. Claims for false arrest and false imprisonment accrue "at the time the individual is brought before a magistrate or arraigned on charges." *Parish v. City of Elkhart*, 614 F.3d 677, 681 (7th Cir. 2010). When it is unclear when that exactly occurred, Courts have assumed that a Plaintiff is brought before a judge shortly after his or her arrest. *E.g. Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1070 (N.D. Ill. 2022); *Jones v. City of Chicago*, No. 23-CV-4975, 2024 WL 4753687, at *2 (N.D. Ill. Nov. 12, 2024). Plaintiff filed his initial complaint on April 4, 2024. Therefore, his claims relating the March 10, 2022 arrest and one-day imprisonment are time barred. Because this issue cannot be corrected by repleading, Plaintiff's false arrest and false imprisonment claims relating to conduct occurring on March 10, 2022 are dismissed with prejudice.[2]

---

[2] The Court's analysis was not aided by Plaintiff's response, which stated that it was "perhaps…true" that the statute of limitations barred the March 2022 claims, but then argued that "key legal principles regarding accrual and the procedural posture of this case" might change the analysis. Doc. 35 at 4. Given that Plaintiff did not cite any actual legal principle, the Court considers this argument waived.

Still remaining are claims for false arrest and false imprisonment related to Plaintiff's April 10, 2022 arrest. Section 1983 provides a right of action for constitutional deprivations that occur "under color of" state law. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 825 (7th Cir. 2019). Just because someone is employed as a law enforcement officer does not mean that all of their actions are considered to be "under color of law." *See Greco v. Guss*, 775 F.2d 161, 168 (7th Cir. 1985) (finding that relevant factors for determining "under color of law" include whether the officer is on-duty or off-duty, identifies himself as a police officer, or carries a badge or gun). Therefore, it is not enough that Plaintiff has alleged that Christopher DeWitt was employed as a Lake County Sheriff's Deputy. Plaintiff has alleged, generally, that Christopher DeWitt "abus[ed] his authority as a sheriff" and "lied under oath and had seven (7) orders of protection placed against the Plaintiff." Doc. 19 ¶ 12. Plaintiff has also alleged, generally, that both Christopher DeWitt and Julia DeWitt falsely reported violations of orders of protection. However, it does not appear that these allegations are linked to Plaintiff's April 2022 arrest and imprisonment. Rather, Plaintiff has alleged that the April 2022 arrest was caused by Christopher DeWitt seeing something on their mother's Ring Doorbell and then instructing his mother to call the police. Doc. 19 ¶ 38-39. Nothing about that allegation suggests that Christopher DeWitt was acting under color of law; to the contrary, a conversation with one's mother about one's brother is distinctly personal. Moreover, there are no allegations in the complaint that Christopher DeWitt was on duty, in uniform, or otherwise presented any indicia of law enforcement employment at any time relevant to this case, let alone with respect to Plaintiff's April 2022 arrest.[3] Therefore, Plaintiff has not properly pled that Christopher DeWitt

---

[3] The closest the complaint comes to such an allegation is the statement that "due to his brother's connections, Plaintiff was made to go down to the police station and that is where Plaintiff was served" with a January 2022 order of protection. Doc. 19 ¶ 31. However, Plaintiff has not alleged that any Constitutional violation resulted from this event.

acted under color of law, nor has Plaintiff provided any other basis for Section 1983 liability for Christopher DeWitt.[4] Count I and II are therefore dismissed. To the extent that Plaintiff can plead facts supporting the legal conclusion that Christopher DeWitt acted under color of law to bring about Plaintiff's April 2022 arrest or imprisonment, Plaintiff may amend the complaint.

### ii.    Failure to Intervene

The Court dismisses Plaintiff's failure to intervene claim for similar reasons to those stated above. Just like a false imprisonment or false arrest claim, a failure to intervene claim under Section 1983 requires that the defendant acted under color of law. Plaintiff has not adequately alleged that Christopher DeWitt did so on any particular occasion relevant to this case. Moreover, even if Plaintiff were able to overcome that hurdle, he has not adequately pled the other elements of the offense. A failure to intervene claim requires that an officer (1) had reason to know that a constitutional violation was being committed and (2) had a realistic opportunity to intervene to prevent the harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Plaintiff's amended complaint alleges that "Deputy Christopher DeWitt stood by without intervening to prevent [sic] from violating Plaintiff's Constitutional rights, even though he had a realistic opportunity to prevent others from doing so but failed to intervene to stop the unlawful conduct." Doc. 19 ¶ 69. The Court understands this to be an allegation that Christopher DeWitt was a bystander to certain acts in which other law enforcement officers violated Plaintiff's Constitutional rights. But this allegation is threadbare as to who Christopher DeWitt should have stopped from committing the Constitutional violations, when these violations occurred, or what the Constitutional violations were. The facts alleged throughout the complaint place Christopher DeWitt at the heart of alleged misconduct, as he allegedly "concocted a plan to

---

[4] Plaintiff does not even allege that Christopher DeWitt was present for, or provided evidence that led to, the April 2022 arrest.

cut Plaintiff off from his daughter's life by throwing him in jail 4 times on 4 separate warrants." *Id.* ¶ 51. This is problematic because one cannot simultaneously be a principal actor and a bystander to constitutional misconduct in a failure to intervene claim. *See Velez v. City of Chicago*, 18-CV-08144, 2023 WL 6388231, at *15 (N.D. Ill. Sept. 30, 2023) ("[O]ne cannot fail to intervene in one's *own* conduct."); *Thompson v. Vill. of Monee*, 12-CV-5020, 2013 WL 3337801, at *13 (N.D. Ill. July 1, 2013) (dismissing failure to intervene claim with prejudice when officer-defendant "cannot possibly intervene to stop his own conduct."). The Court therefore dismisses Count III. To the extent that Plaintiff can plead facts that show that Christopher DeWitt should have intervened in some Constitutional violation he did not himself commit, and was at the time acting under color of law, Plaintiff is permitted to amend the complaint.

  **iii.**   **Conspiracy to Deprive of Constitutional Rights**

    Plaintiff alleges the existence of a Section 1983 conspiracy between Does 1-3 and Christopher DeWitt to deprive Plaintiff of his right to due process and a fair trial. Doc. 19 ¶ 75. Specifically, Plaintiff complains that he was not provided with unspecified "exculpatory information to which he was lawfully entitled" and that the co-conspirators fabricated evidence and committed perjury. *Id.* ¶¶ 76, 78. To state a claim of conspiracy, Plaintiff must allege that (1) there was an express or implied agreement among defendants to deprive the plaintiff of his constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018). The complaint must identify the conspiracy's members, its purpose, and approximate dates. *Jones v. City of Chicago*, 23-CV-4975, 2024 WL 4753687, at *5 (N.D. Ill. Nov. 12, 2024). Bare conclusions of a conspiracy are insufficient to survive a motion to dismiss. *See Cooney v.*

*Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Plaintiffs are not required to have direct evidence, but they must allege at least non-speculative circumstantial evidence supporting the inference of a conspiracy. *Daugherty*, 906 F.3d at 612.

Here, Plaintiff has not alleged any approximate dates for the conspiracy. In fact, Plaintiff does not even allege which court proceeding he is complaining about having had fabricated evidence, perjury, or withholding of exculpatory evidence. Doc. 35 at 11 (Plaintiff refers only to "certain criminal prosecutions" in his brief). As is detailed above, Plaintiff also has not alleged any specific facts with respect to Does 1-3 such that one could infer that they agreed to join a conspiracy. Plaintiff has alleged that Christopher DeWitt lied under oath to obtain orders of protection. But one person does not a conspiracy make. Moreover, as discussed above, there are no facts that have been alleged to demonstrate that any wrongful acts were committed by someone acting under color of law. Count IV is therefore dismissed.

### iv. Malicious Prosecution

The final count against Christopher DeWitt is one for malicious prosecution. To state a claim for malicious prosecution under Illinois law, Plaintiff must allege that: (1) he "was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in [his] favor; and (5) there was an injury." *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). Regarding the third element, "some official action is required; a citizen does not commence a prosecution when he merely gives false information" to the authorities. *Randall v. Lemke*, 726 N.E.2d 183, 185 (Ill. App. Ct. 2000). Only if the false information is given with knowledge of the falsity and then the authorities commence judicial proceedings based on that information is a citizen potentially liable. *Id.*

11

Here, Plaintiff alleges that Christopher DeWitt lied to obtain protective orders against Plaintiff and then caused the police to be called for false violations of those protective orders, that this resulted in multiple judicial proceeding against Plaintiff that were terminated in his favor, and that Plaintiff was injured by, among other things, serving jail time. Doc. 19 at ¶¶ 91-107. This successfully states a claim for malicious prosecution under Illinois law.[5]

### C. Claim Against Julia Cwienkala DeWitt

Plaintiff brings a single claim against Julia DeWitt for malicious prosecution (Count VI). For the reasons set forth above, the Court believes that this claim is adequately pled under Illinois law. Just like the allegations as to Christopher DeWitt, Plaintiff alleges that Julia DeWitt lied to obtain protective orders against him and then caused the police to be called for false violations of those protective orders, that this resulted in multiple judicial proceeding against Plaintiff that were terminated in his favor, and that Plaintiff was injured by, among other things, serving jail time. This successfully states a claim for malicious prosecution under Illinois law.

The Court does not agree with Julia DeWitt's argument that the claim against her must be dismissed pursuant to Rule 10(b) because it combines claims that derive from separate occurrences. More specifically, Julia DeWitt alleges that Count VI is problematic because it refers to Plaintiff's separate proceedings in Lake County and Kane County, and Julia DeWitt was only involved in the Kane County claim.

Rule 10(b) states that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances… If doing so would promote clarity, each claim founded on a separate transaction or occurrence… must be stated in a separate count." Fed. R. Civ. P. 10(b). "The primary purpose of [this rule] is to give defendants fair notice

---

[5] The Court discusses below in the section relating to Julia DeWitt whether Plaintiff has adequately pled malicious prosecution under Section 1983.

of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011).

Here, the Court believes the combined allegations are sufficiently clear to put Julia DeWitt on notice of the claims against her. While it is true that the amended complaint could have been structured in a way where the malicious prosecution claims were separate for the Kane County and Lake County prosecutions, the Court will not outright dismiss the claim for what it views as a minor technical issue. Moreover, the Court is not allowed to consider at this stage Julia DeWitt's averment that she was only involved in one of the two prosecutions.

Moving to Plaintiff's malicious prosecution claim under Section 1983, this claim suffers from the same lack of a state actor as is discussed at length earlier in this opinion. Plaintiff contends that there are sufficient allegations in the complaint to make it plausible that Julia DeWitt qualifies as a state actor. When the defendant is not a government official or employee, "the plaintiff must show that the private entity acted under the color of state law." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). In making this determination, the Court applies the tests outlined by the Seventh Circuit. *See id.* at 823–24 ("we believe that it is useful to describe these tests as the symbiotic relationship test, the state command and encouragement test, the joint participation doctrine, and the public function test."). The common focus of these tests is whether there is a "such a close nexus between the State and the challenged action that the challenged action may be fairly treated as that of the State itself." *Id.* at 823.

Plaintiff claims that Julia DeWitt qualifies as a state actor under the public function test, the state compulsion test, and the nexus/joint action test. The Court disagrees. The public function test looks to whether a private entity exercises "powers traditionally exclusively reserved to the state," such as running elections and company towns. *Jackson v. Metro. Edison*

*Co.*, 419 U.S. 345, 352 (1974). A private entity becomes a governmental actor when it is performing an action that is "traditionally the exclusive prerogative of the state." *Id.* at 353. Julia DeWitt's conduct surrounding the protective orders clearly does not serve a public function as she has not taken on a role traditionally reserved for the state.

Next, the Court turns to whether Julia DeWitt's conduct is attributable to the influence of state compulsion, or as it is more commonly referred to in the Seventh Circuit, the state command and encouragement test. Under this test, private citizen actions may be fairly attributable to the state when the state compels those actions. *See Starnes v. Cap. Cities Media, Inc.*, 39 F.3d 1394, 1396 (7th Cir. 1994). This theory is insufficient because Plaintiff has not provided facts in the complaint that any state actor compelled Julia DeWitt's actions.

Finally, the Court addresses whether Julia DeWitt's conduct falls within the joint participation doctrine. The joint participation doctrine, also known as the conspiracy theory of Section 1983 liability, requires that a plaintiff plausibly allege a "*concerted effort* between a state actor" and the private party to deprive the plaintiff of her constitutional rights. *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). Under this theory, the plaintiff must allege that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Id.* Here, there are no such allegations. Plaintiff has asserted that Julia DeWitt and Christopher DeWitt had an affair and plotted to cut Plaintiff off from his daughter by "throwing him in jail." Doc. 19 ¶¶ 11, 51. These allegations suggest that Julia DeWitt and Christopher DeWitt were acting solely in their personal capacities.[6] Plaintiff has therefore not successfully alleged a malicious prosecution claim under Section 1983.

---

[6] Plaintiff argues in his response brief that Christopher DeWitt "purported to act in an official capacity to influence the Kane County proceeding" used "his position as a law enforcement officer to advise,

14

### D.  Claims Against Lake County Sheriff's Office

Finally, Plaintiff brings two claims against the Lake County Sheriff's Office – a *Monell* claim under Section 1983 and indemnification claim under Illinois state law.

The Court first addresses Plaintiff's claim made pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) against the Lake County Sheriff's Office. The Defendants challenge this claim on two fronts: (1) the claim should have been brought against the Sheriff in his official capacity, not the Sherriff's Office, and (2) the allegations within the complaint are conclusory and relate to no specific alleged policy or practice that supposedly caused the constitutional violation. Plaintiff at no point references or defends his *Monell* claim in his responsive pleading. "Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). "We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." *Id.* "Our system of justice is adversarial" and "if the Court is given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Id.* Here, Defendant has stated two plausible attacks on Count V, and it is therefore appropriate for the Court to dismiss the claim with prejudice because it has been abandoned by Plaintiff.

Plaintiff also brings an indemnification claim against Lake County Sheriff's Office, and this Court finds that it does not at this time survive dismissal. Plaintiff brings this claim under the

---

encourage, or assist Julia in initiating or continuing the proceedings," and "leverage[ed] DeWitt's state authority" in the Kane County case. Doc. 36 at 7. None of these allegations appear in the complaint, and it is unclear how a Lake County Sheriff's Deputy could affect Kane County court proceedings. But if Plaintiff's counsel believes that these allegations are supported by the evidence as is required by Rule 11, these would be the types of facts that could lead to a reasonable inference of state action.

Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102. Doc. 19 at ¶ 108-111. The Act requires a local public entity, such as a county or sheriff's office, to indemnify an employee who is liable for a judgment while acting within the scope of their employment. Employee conduct "is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the [employer]." *Pyne v. Witmer*, 543 N.E. 2d 1304, 1308 (Ill. 1989) (citing Restatement (Second) of Agency § 228 (1958)).

As discussed in detail above, Plaintiff has not properly pled his claims against the three unidentified deputies, and therefore his indemnity claim cannot proceed against the Lake County Sheriff's Office for the conduct of Does 1-3. This claim as to Does 1-3 is therefore dismissed. As for the remainder of the claim which arises from the conduct of Christopher DeWitt, the current complaint contains no facts from which one could draw an inference that Christopher DeWitt's alleged misconduct was within the scope of his employment other than perhaps that Plaintiff was served with an order of protection at a police station "due to his brother's connections." That is insufficient. Plaintiff can attempt to remedy this deficiency if he chooses to amend the complaint.

## CONCLUSION

To summarize the Court's ruling:

- Count I is dismissed with prejudice for claims arising from Plaintiff's March 10, 2022 arrest and dismissed without prejudice as to Plaintiff's April 10, 2022 arrest.

- Count II is dismissed with prejudice for claims arising from Plaintiff's March 10, 2022 imprisonment and dismissed without prejudice as to Plaintiff's April 10, 2022 imprisonment.

- Count III is dismissed without prejudice as to all Defendants.

- Count IV is dismissed without prejudice as to all Defendants.

- Count V is dismissed with prejudice.

- Count VI is dismissed without prejudice as to the Section 1983 claims. The state law claim remains against Christopher DeWitt and Julia DeWitt.

- Count VII is dismissed without prejudice.

The Court notes that at present, only state law claims remain. This is not enough to provide a basis for federal subject matter jurisdiction. Plaintiff is given until May 30, 2025 to amend the complaint and attempt to state a valid federal claim consistent with this opinion. If Plaintiff does not do so, the case will be dismissed for lack of jurisdiction.

Dated: April 16, 2025

_____

APRIL M. PERRY
United States District Judge