UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL DEWITT, | ) |
| Plaintiff, | ) |
| v. | ) No. 24-CV-2737 |
| | ) Judge April M. Perry |
| LAKE COUNTY SHERIFF'S OFFICE, LAKE COUNTY SHERIFF'S DEPUTY CHRISTOPHER DEWITT, LAKE COUNTY SHERIFF'S DEPUTIES DOES 1-3, JULIA CWIENKALA DEWITT, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Michael DeWitt ("Plaintiff") brings this case against the Lake County Sheriff's Office, Lake Country Sheriff's Deputy Christopher DeWitt, Lake Country Sheriff's Deputies Does 1-3 ("Does 1-3"), and Julia Cwienkala DeWitt (collectively "Defendants") under 42 U.S.C. § 1983 and Illinois state law. Specifically, Plaintiff alleges false arrest in violation of Section 1983 (Count I), false imprisonment in violation of Section 1983 (Count II), failure to intervene in violation of Section 1983 (Count III), conspiracy in violation of Section 1983 (Count IV), and malicious prosecution in violation of Illinois law and Section 1983 (Count V). Plaintiff also asks that Defendants' conduct be indemnified by the Lake County Sheriff's Office under Illinois law (Count VI). Doc. 40.

Before this Court are Defendants' third motions to dismiss. Doc. 42, 43. Following the first motions to dismiss, Plaintiff elected to amend his complaint rather than proceed to briefing. Doc. 12, 14, 19. The second motions to dismiss were fully briefed and the Court dismissed all of Plaintiff's claims except the state law malicious prosecution claim against Christopher DeWitt

1

and Julia DeWitt, which the Court noted did not provide a basis for federal subject matter jurisdiction.[1] Doc. 39. Plaintiff filed the third amended complaint on May 30, 2025, and the third motions to dismiss were filed shortly thereafter. Doc. 40, 42, 43. For the following reasons, Defendants' motions to dismiss are granted.

## BACKGROUND

The below facts are drawn from allegations in Plaintiff's complaint, which the Court accepts as true, drawing all reasonable inferences in Plaintiff's favor. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

According to the third amended complaint, Christopher DeWitt and Does 1-3 are Sheriff's Deputies in Lake County. Doc. 40 ¶¶ 6, 9. Christopher DeWitt is also Plaintiff's older brother and allegedly had an affair with Plaintiff's ex-wife, Julia DeWitt. *Id.* ¶¶ 10-11.

Plaintiff claims that Christopher DeWitt, "not wanting to have his improprieties leaked out," lied under oath to obtain seven orders of protection against Plaintiff, and that Christopher DeWitt and Julia DeWitt wrongfully reported Plaintiff to the police claiming that Plaintiff had violated those protective orders. *Id.* ¶¶ 12-13. Plaintiff further alleges that Christopher DeWitt and Julia DeWitt "concocted a plan to cut Plaintiff off from his daughter's life by throwing him in jail 4 times on 4 separate warrants, totaling 160 days." *Id.* ¶ 45.

The first incident occurred on October 12, 2021, when Algonquin Police responded to an incident involving Plaintiff's daughter at Plaintiff's ex-mother-in-law's house. *Id.* ¶¶ 14-16. The individuals included in the police report were Julia DeWitt, Christopher DeWitt, Elizabeth DeWitt (Plaintiff's mother), A.D. (Plaintiff's daughter), and Katherine King (Plaintiff's ex-

---

[1] This Court dismissed with prejudice a *Monell* claim and false arrest and imprisonment claims arising from events on March 10, 2022. Doc. 39 at 16-17.

2

mother-in-law). *Id.* ¶ 18. In November 2021, Katherine King petitioned the court for an order of protection against Plaintiff. *Id.* ¶ 19.

More orders of protection followed. On January 5, 2022, Julia DeWitt obtained an order of protection against Plaintiff. *Id.* ¶ 26. Later that month on January 16, Plaintiff was served with the order at a police station. *Id.* ¶¶ 29, 31. Plaintiff claims he was made to go to the police station "due to his brother's connections." *Id.* ¶ 31. The following day, Plaintiff sent a message via a family parenting app to check on his daughter and Julia DeWitt did not respond. *Id.* ¶ 32. On January 25, Julia DeWitt called in a violation of the order of protection for the message sent on January 17. *Id.* ¶ 33. Between February and March 2022, there were five additional petitions for orders of protection against Plaintiff filed by Maureen DeWitt, Andi Tuchten, Elizabeth DeWitt, Matthew DeWitt, and Christopher DeWitt. *Id.* ¶ 35. The complaint alleges that these were all "orchestrated" by Christopher DeWitt. *Id.* ¶ 36.

Plaintiff alleges that he was jailed four separate times for violations of orders of protection. On March 10, 2022, Plaintiff was held at the Carpentersville Police Department because he allegedly violated an order of protection. *Id.* ¶ 37. From April 10 through 27, 2022, Plaintiff was incarcerated in Lake County Jail for another alleged violation. *Id.* ¶ 38. From June 20 through 27, 2022, Plaintiff was held at the Lake County jail until he posted bail and was given probation. *Id.* ¶¶ 42-43. And finally, from January 23 to June 8, 2023, Plaintiff was again jailed at Lake County. *Id.* ¶ 44. On April 4, 2023, Plaintiff was found not guilty in Kane County. *Id.* ¶ 58. On May 23, 2023, Plaintiff was found not guilty in Lake County. *Id.* ¶ 59. It is unclear how

3

Plaintiff's arrests and detentions correspond to the not-guilty findings in Kane County and Lake County.

Plaintiff alleges that one of the protective orders, which as best the Court can tell was issued May 2, 2022, was improperly served and Plaintiff thus cannot be liable for any violation arising therefrom. *Id.* ¶¶ 49-54. Plaintiff also claims that the signature was forged on the affidavit of service and that Plaintiff "believes" that Christopher Dewitt or someone inside the Sheriff's Office forged the signature. *Id.* ¶¶ 53-56.

Plaintiff's third amended complaint also alleges that Christopher DeWitt lied under oath at a sentencing proceeding, stating that he had not seen Julia DeWitt in over four years despite a police report containing both of their signatures. *Id.* ¶ 57.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

4

678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Ashcroft*, 556 U.S. at 678.

## ANALYSIS

Plaintiff has made very few changes to the third amended complaint following the Court's opinion of April 16, 2025 ("April 16 Opinion"). Doc. 39. The Court therefore incorporates the reasoning of the April 16 Opinion herein, highlighting why the limited changes that were made are insufficient for Plaintiff to state a plausible claim.

### A. Claims Against Does 1-3

The Court begins with the claims against Lake County Sheriff's Deputies Does 1-3. This Court previously dismissed Plaintiff's claims against Does 1-3 because the second amended complaint did "not include a single factual allegation explaining how any one of the Doe defendants was involved in this dispute." Doc. 39 at 5. The Court noted that Plaintiff did not even specify whether the Does participated in Plaintiff's arrests (and if so, which of the four arrests), or were instead corrections officers during one of his custodial stints. *Id*. Plaintiff was given leave to amend his complaint "to the extent he can plead facts that allow the Court to draw the reasonable inference that Does 1-3 may plausibly be liable for some part of the misconduct alleged." *Id.* at 6.

Plaintiff has made extremely limited attempts in the third amended complaint to correct the issues discussed in the April 16 Opinion. Specifically, Plaintiff has added the modifier of "Between April 10, 2022 and June 20, 2022" to the allegation that "Defendants Lake County Sheriff's Deputy Christopher DeWitt and Lake County Sheriff's Deputies Does 1-3 acted under

5

color of state law during the constitutional violations described herein." Compare Doc. 19 ¶ 67 and Doc. 40 ¶ 72. Defendant added the same date range to the allegation that the Does "stood by without intervening to prevent Defendant Lake County Sheriff's Deputy Christopher Dewitt from violating Plaintiff's Constitutional rights, even though they had a realistic opportunity to prevent him from doing so but failed to intervene to stop the unlawful conduct." Compare Doc. 19 ¶ 68 and Doc. 40 ¶ 73. Plaintiff also added the phrase "while working as deputies" to the beginning of several paragraphs of the complaint. Doc. 40 ¶¶ 88, 92, 94, 95.

Apart from the changes noted above, no clarity has been provided about who the Doe Defendants are or what they did to injure Plaintiff. It remains unclear which (if any) of Plaintiff's arrests between April and June 2022 involved the Does, or whether they were instead correctional officers he encountered while jailed during that time. Plaintiff argues that he needs discovery to determine who the Does are. Doc. 49 at 5. The problem is not, however, that Plaintiff does not know their identities. The problem is that Plaintiff does not plausibly allege any fact (as opposed to a legal conclusion) from which one could reasonably infer that a Doe harmed him. And these are facts within Plaintiff's knowledge: he was present for his arrests, he was present for his time in custody, and he has received all of the discovery in his associated criminal proceedings, two of which went to trial. Those facts make this case distinguishable from *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995), in which the Seventh Circuit noted that a *pro se* prisoner who had no opportunity for pre-complaint inquiry should not be held to the pleading standards of an "ordinary case." This case is similarly distinguishable from *Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U, Will Cnty., Ill.*, 46 F.3d 682, 688 (7th Cir. 1995), which involved a complaint of discrimination against a school district and unknown actors within that school district who engaged in "a complex series of actions over a span of years."

Here, Plaintiff's injury stemmed not from organizational malfeasance but instead from an alleged scheme orchestrated by Plaintiff's brother. It is theoretically possible that someone within the Lake County Sheriff's Office worked with Christopher DeWitt to injure Plaintiff in some way. But theoretically possible is not the equivalent of plausible. The Supreme Court requires that factual allegations in the complaint "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The third amended complaint contains many legal conclusions about "false or misleading information" being provided, exculpatory evidence being concealed, evidence being fabricated, "and/or …. other wrongful conduct that was instrumental in the prosecution of Plaintiff." Doc. 40 ¶¶ 91-95. But there are no facts pled about what false or misleading information was provided, exculpatory evidence was withheld, or evidence was fabricated such that the Court could draw the reasonable inference that the Does were responsible. *See Shea v. Winnebago Cnty. Sheriff's Dep't*, 746 F. App'x 541, 546 (7th Cir. 2018) (affirming dismissal of complaint involving "litany of problems [the plaintiff] experienced while in jail" where the plaintiff gave "no explanation of who was responsible for [plaintiff's] problems or how he was harmed by a particular person's actions."). The Court therefore dismisses the complaint as it relates to Does 1-3.

    **B. Claims Against Christopher DeWitt**

The Court next considers the Section 1983 claims against Christopher DeWitt, which include claims for false arrest (Count I), false imprisonment (Count II), failure to intervene (Count III), conspiracy (Count IV), and malicious prosecution (Count V). As noted in the April 16 Opinion, all of these claims require that Christopher DeWitt was acting under color of state law when he injured Plaintiff. Doc. 39 at 8-10. As the Court explained at length, active assignment as a law enforcement officer at the time of the incident is not determinative, and the

inquiry instead turns on whether the law enforcement officer was engaged in a personal pursuit or official duties. *See Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 516 (7th Cir. 2007) ("Whether a particular action was under color of state law depends largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." (internal citation omitted)). As the Court also explained at length, the dispute in this matter, which involved Plaintiff's brother, ex-wife, mother, mother-in-law, and child, is on its face distinctly personal.

      In the third amended complaint, Plaintiff adds four allegations to bolster his conclusion that Christopher DeWitt was acting under color of law when he injured Plaintiff. First, Plaintiff adds that the May 2022 affidavit of service for an order of protection contained a forged signature, which "Plaintiff believes that Defendant Dewitt or someone inside the department forged." Doc. 40 ¶¶ 53-56. Second, Plaintiff adds that during a sentencing "Defendant DeWitt lied under oath stating that he had not seen Julia in over four years but police report [sic] indicate that both Julia and Defendant DeWitt's signatures were on it together." *Id*. ¶ 57. Third, Plaintiff adds that Christopher DeWitt, "asked his counterparts to assist him in bringing false charges against his brother, causing him to be jailed on multiple occasions, without probable cause or justification." *Id*. ¶ 80. Fourth, Plaintiff adds to numerous paragraphs that various conduct took place while Christopher Dewitt was "working as [a] deput[y]." *See e.g., id*. ¶¶ 88-92, 94, 95.

      These additions, even when read broadly, are not enough to plausibly conclude that Christopher DeWitt was acting under color of state law for any of the Section 1983 claims. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990) ("[A] mere assertion that one is a state officer does not necessarily mean that one acts under color of state law."). The first allegation – that "Plaintiff believes that Defendant DeWitt or someone inside the department

forged" a signature – is vaporously thin. Doc. 40 ¶ 56. As Defendants note, the phrasing that it is *Plaintiff's* belief that this occurred seems carefully designed to avoid counsel's Rule 11 obligation to certify that the allegation has evidentiary support. Doc. 43 at 4. But even setting that aside, the allegation that Christopher DeWitt *or someone else* committed a wrongful act does not do anything to show that Christopher DeWitt was acting under color of state law at this time. Furthermore, Plaintiff's false arrest and false imprisonment claims rest on his April 2022 arrest and imprisonment. *See* Doc. 39 at 8-9. Whatever may have occurred in May 2022 would be irrelevant to establishing a false arrest and imprisonment that preceded that date.[2]

      The Court moves next to Christopher DeWitt's allegedly false testimony at a sentencing hearing. Although Plaintiff does not specify when such sentencing hearing occurred or what charge it related to, this testimony would only constitute an action under color of law if Christopher DeWitt was testifying at that sentencing as a law enforcement officer as opposed to as a victim or lay witness. But the third amended complaint does not make any allegations that Christopher DeWitt was called to testify as a law enforcement officer. And, given that Christopher DeWitt was related to both the victims and defendant in that case and that the supposedly false testimony involved when he last saw his alleged paramour Julia DeWitt, it is not a reasonable inference that Christopher DeWitt was called to testify in his capacity as a law enforcement officer. Thus, this new allegation does not provide support for Christopher DeWitt acting under color of law.

---

[2] Given the vagueness of the third amended complaint, it is perhaps possible that Plaintiff's theory for Count I and II has changed from complaining about Plaintiff's April 2022 arrest and imprisonment to some other arrest and imprisonment. If so, Plaintiff did not mention anywhere in the briefing of the motion to dismiss that such a major shift in theory had occurred. Moreover, the fact that the Court cannot discern what arrest and imprisonment Plaintiff complains of is further indication that defendants have not been given "fair notice of what the claim is and the grounds upon which it rests" such that Counts I and II must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Third, the allegation that Christopher DeWitt asked Lake County Sheriff's Deputies to bring charges against his brother does not indicate that Christopher DeWitt was acting under color of law when he did so. "Law enforcement officers, like all other citizens, may invoke the state's protection without rendering themselves liable under § 1983." *See Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 831 (7th Cir. 2019) (holding that a police officer who filed a complaint about being threatened by a civilian he encountered while on duty was not acting as a state actor when making that complaint); *Chavez v. Guerrero*, 465 F. Supp. 2d at 871 (N.D. Ill. 2006) (finding that police officer was engaged in purely private pursuit fueled by romantic interests). Nothing in the third amended complaint supports the finding that Christopher DeWitt acted in his capacity as a Deputy Sheriff when requesting orders of protection or prosecutions arising from violations of orders of protection in cases where he and his family members were victims, even if it is accepted as true that Christopher DeWitt lied while doing so.

Finally, Plaintiff's addition of the phrase "while working as a deputy" to the beginning of numerous conclusory allegations which include actions by deputies and non-deputies alike does not advance the ball. The question is not whether Christopher DeWitt worked as a Deputy Sheriff; the relevant question is whether Christopher DeWitt misused his authority or power as a Deputy Sheriff to injure Plaintiff. Plaintiff has not alleged facts to support the conclusion that Christopher DeWitt's alleged misconduct was "related in some way to the performance of the duties of [his] state office." *Barnes*, 943 F.3d at 831. Nor is it a reasonable inference that he was acting under color of law, given that these acts involved Christopher DeWitt's family members and his supposed desire to avoid having "his improprieties leaked out." Doc. 40 ¶ 12.

Additionally, as discussed more in the April 16 Opinion, Plaintiff's Section 1983 claims fail for other reasons. For the failure to intervene claim, Plaintiff continues to press the theory

10

that Christopher DeWitt should have intervened to stop his own actions, which theory this Court has noted is legally unsupportable. Doc. 39 at 9-10. For the conspiracy claim, Plaintiff continues to assert bare and speculative conclusions of a conspiracy without explaining the conspiracy's members, purpose, or dates. *Id.* at 10-11. For all of these reasons, the Court dismisses the Section 1983 claims against Christopher DeWitt.

### C. Claim Against Julia DeWitt

Finally, the Court moves to the sole claim against Julia DeWitt, which alleges malicious prosecution in violation of state law and Section 1983 (Count V). As noted in the April 16 Opinion, the state law claim was adequately alleged, but the Section 1983 claim lacked any plausible allegation that Julia DeWitt constituted a state actor. Doc. 39 at 13-14. The only changes that the third amended complaint has made in this regard is adding the phrase "while working as deputies" to several of the allegations against Julia DeWitt and others. Doc. 40 ¶¶ 88-92, 94-95. Julia DeWitt is, of course, not a deputy, and therefore these additions are nonsensical at best. *See id.* ¶¶ 94, 95. For all of the reasons previously stated in the April 16 Opinion, Plaintiff has not plausibly alleged a malicious prosecution claim under Section 1983 against Julia DeWitt.

### D. State Law Claims

All that remains are claims for malicious prosecution and indemnification, which are brought under Illinois state law. Given the fact that the Court is dismissing all the federal claims, it is also appropriate to dismiss the state law claims. *See Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999) ("[T]he usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## CONCLUSION

11

The third amended complaint tells a story of marriage, adultery, divorce, child custody disputes, domestic violence, and a grudge between brothers. For all that may be said about that story, one thing is clear: it is not a federal case. For the forgoing reasons, Defendants' motions to dismiss are granted. Because the Court already gave Plaintiff leave to amend with explicit instructions on how to do so and those instructions were largely ignored, this dismissal is with prejudice as to the federal claims. Plaintiff's remaining state law claims are dismissed without prejudice.

Dated: November 25, 2025

                                                          APRIL M. PERRY
                                                          United States District Judge